IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| JOHN DEDMAN, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| v. | ) | No. 08-2690-STA |
| | ) | |
| SAM'S EAST, INC., | ) | |
| | ) | |
|        Defendant. | ) | |

_____

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendant Sam's East, Inc.'s Motion for Summary Judgment (D.E. # 22) filed on June 26, 2009.  Plaintiff responded in opposition on July 24, 2009 (D.E. # 26, 28).  Defendant sought and was granted leave to file a reply brief (D.E. # 32).  For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise noted.  Plaintiff began working for Sam's in September of 2000, as Tire Technician in Sherwood, Arkansas.  Def.'s Statement of Undisputed Facts ¶ 1.  Plaintiff made a lateral transfer to another Sam's Club in Bartlett, Tennessee, and was ultimately promoted to the Overnight Assistant Manager position at Sam's Club No. 8292 in Memphis, Tennessee in July 2006.  *Id*.  Plaintiff continued in this position until his termination for Gross Misconduct on September 27, 2007.  *Id*.  Plaintiff alleges that the real reason for his dismissal was retaliation over a workers' comp claim he filed less than a year earlier.

Sam's Alcohol and Drug Abuse Policy (the "Alcohol Abuse Policy") provides, among other things, that the "use, possession of an open container, personal sale, transfer or acceptance of alcohol on Wal-Mart property or while performing Wal-Mart business is strictly prohibited. . . . Any violation of this Policy will be grounds for immediate termination." *Id*. at ¶ 2.[1]  The Alcohol Abuse Policy is applicable to all Sam's Associates, both hourly and salaried.  *Id*.  Violation of the Alcohol Abuse Policy is "Gross Misconduct" and renders an Associate ineligible for rehire.  *Id*.  Plaintiff challenges this statement by citing the fact that the employees who received the alcohol were not disciplined. Sam's is a subsidiary of Wal-Mart Stores, Inc., and therefore Wal-Mart employment policies apply equally Sam's Associates.  *Id*.  When Plaintiff commenced employment with Sam's, he acknowledged in writing that he received and read a copy of the Alcohol Abuse Policy.  *Id*. at ¶ 3.

On or about September 24, 2007, Archie Williams, Club Manager, received a report from Carrie Wright, Operations Manager, that Plaintiff distributed bottles of beer to one former and three current Associates: Brandy Lawrence (former), Diane Shires (current), Rhonda Patrick (current) and Leslie Rockholt (current) in the parking lot of Club No. 8292.  *Id*. at ¶ 4.  Although he states elsewhere that he specifically warned the employees not to drink the beer, Plaintiff contends that the alcohol was actually a novelty beer bottle, which only appeared

---

[1] Plaintiff has denied this statement; however, the Court finds that Plaintiff has failed to cite any part of the record to dispute it.  It appears to the Court that the statement is quoted from the policy.

to contain alcohol.[2]  Each Associate involved in the September 24, 2007, incident was a "Check-Out Supervisor."  *Id*. at ¶ 5.  A Check-Out Supervisor is an hourly supervisory level position, and is lower than an Assistant Manager in the management hierarchy at Sam's.  *Id*.  Because Ms. Wright's report involved an Assistant Manager, Williams reported it to his supervisor, Penny Bateman, Market Human Resources Manager.  *Id*. at ¶ 6.  Plaintiff asserts that the employees who received alcohol from him were also managers because they supervised other employees.

Ms. Bateman instructed Williams to investigate the report.  *Id*.  To that end, Williams met with and obtained statements from Lawrence, Shires, Patrick, and Rockholt.  *Id*.  Plaintiff contends that the statements were not obtained from the other employees until January 2008, after his termination.[3]  Each Associate reported that while they were leaving work at the end of their shift, Plaintiff distributed bottles of beer to them in the parking lot of Club No. 8292.  *Id*. at ¶ 7.[4]  After reviewing the statements, Ms. Bateman determined that Plaintiff had violated the Alcohol Abuse Policy.  *Id*. at ¶ 8.  Ms. Bateman further determined that the results of the

---

[2] Plaintiff further asserts that Williams did not obtain statements from the other employees who received the alcohol from Plaintiff prior to terminating Plaintiff.  The Court finds this objection without merit as to this statement because Defendant has not asserted that Williams took statements from those employees in this statement of fact.

[3] In response to statement of fact ¶ 7, Plaintiff has cited language which is not contained in statement of fact ¶ 7.  The statements to which Plaintiff respond appear to come from footnote 7 which appears in statement of fact ¶ 7.  In that footnote, Defendant asserts that the employee statements were dated January 2008 because the original statements given to management in September 2007 were inadvertently discarded and management asked the employees to re-write statements in January 2008.  Plaintiffs argue that this new assertion is evidence of spoliation and that it contradicts the testimony of the other employees who all stated that they gave only one statement to management.  The Court addresses this issue below.

[4] Plaintiff has denied this statement on the basis that the other employees accepted the beer bottles with the understanding that the alcohol was not intended to be consumed.  Rather the bottles were collectors' items.  Be that as it may, the Court finds that defendant's statement is accurate: Plaintiff distributed bottles of beer to other employees.

investigation justified Plaintiff's discharge and she terminated Plaintiff for "Gross Misconduct." *Id*.  Plaintiff again asserts that the other employees had violated the policy by accepting the bottles of beer, yet they were never disciplined let alone terminated for violating the policy.

On September 27, 2007, Williams asked Plaintiff about the incident.  *Id*. at ¶ 9. Plaintiff admitted that on or about September 24, 2007, he distributed bottles of beer to the identified Check-Out Supervisors in the parking lot of Club No. 8292.  *Id*.[5]  Plaintiff admitted at his deposition that he distributed the bottles of beer and that it was a violation of the Alcohol Abuse Policy:

> Q (p. 60): So you don't deny that you gave them [the Check-Out Supervisors] the bottles of Beer?
>
> A: No, ma'am. Carrie Wright, the Operations Manager, was standing about five feet away from me when it happened, five – ten feet.
>
> Q (p. 64): What you did was give these check-out supervisors bottles of beer, correct?
>
> A: Yes, ma'am.
>
> Q: And that would be considered a violation of the [Alcohol Abuse] policy, according to what it says in this top paragraph [of the Alcohol Abuse policy], correct?
>
> A: According to what's shown in the top paragraph.
>
> Q: Okay. And you don't deny that's what you did?

---

[5] Plaintiff denies this statement; however, Plaintiff has failed to cite a portion of the record that would dispute it.

A: No, ma'am.

*Id*. at ¶ 10.[6]

Williams then communicated Ms. Bateman's decision to discharge Plaintiff and conducted the exit interview.  *Id*. at ¶ 11.  Plaintiff did not mention his workers' compensation claim during the exit interview.  *Id*.  Plaintiff denies this assertion by arguing that Bateman and Williams were already aware of his workers' comp claim.  At his deposition on March 17, 2009, Plaintiff admitted that he also distributed beer at Club No. 8292 to another Associate, James Daniel, on the day after the incident with Rockholt, Shires, Patrick, and Lawrence.  *Id*. at ¶ 12. Plaintiff denies that this fact is material because it is unrelated to the reasons Defendant stated for his termination.

About one year before his discharge, on October 16, 2006, Plaintiff suffered a work-related injury to his leg after he was struck by a forklift at Club No. 8292, for which Sam's provided workers' comp benefits.  *Id*. at ¶ 13.  Plaintiff adds that his injuries involved his leg and back as well as mental injury and denies that Defendant has provided complete workers' comp benefits.  Although Ms. Bateman knew about Plaintiff's work-related injury at the time he was discharged, she had no involvement in any decision-making related to his claim.  *Id*. at ¶ 14.[7] Sam's workers' compensation claims are handled by its third party administrator, CMI.  *Id*.

---

[6] Plaintiff denies this statement by asserting that a violation of the policy was not the real reason for his termination.  However, Plaintiff has failed to dispute the assertion that he distributed the beer and admitted to violating the policy.

[7] Plaintiff has disputed this assertion and cited the deposition testimony of Penny Bateman.  However, the Court finds that the portions of the record cited do not actually dispute the statement that Bateman had no involvement in the decision-making about Plaintiff's workers' comp claim.  *Id*.

Likewise, no one at CMI was involved in Plaintiff's termination in any way. *Id.* at ¶ 15. It is undisputed that Ms. Bateman was the sole decision-maker with respect to Plaintiff's termination. *Id.* at ¶ 16.[8] Plaintiff's workers' compensation claim had nothing to do with Ms. Bateman's decision to discharge Plaintiff. *Id.* Ms. Bateman has terminated other Associates, with and without workers' compensation claims, for violating the Alcohol Abuse Policy. *Id.* at ¶ 17.[9] Plaintiff attributes no statements, actions or otherwise to Ms. Bateman indicating any sort of retaliatory motive. *Id.* at ¶ 18.[10]

In its Motion for Summary Judgment, Defendant argues that Plaintiff has failed to make out a prima facie case of retaliation under Tennessee law. More specifically, Plaintiff cannot show that his workers' comp claim was a substantial factor in his termination. There is no direct evidence that Defendant retaliated against Plaintiff on the basis of his workers' comp claim. Plaintiff has proffered the following circumstantial evidence that his workers' comp claim was a substantial factor in his termination: (1) perceptions of a negative attitude towards him after his injury; (2) other associates involved in the alcohol incident were never discipline; and (3) CMI, the third-party benefits administrator, handled Plaintiff's workers comp claim poorly. According to Defendant all of these proffered examples fail to establish the causal connection between the

_____

[8] Plaintiff disputes this statement but fails to cite any part of the record to support his denial. In fact, the Court finds that the deposition testimony cited actually supports Defendant's statement that Bateman was the sole-decision maker in terminating Plaintiff.

[9] Plaintiff correctly points out that the portion of the record cited in Defendant's statement of facts does not support this contention. The Court finds that it is supported elsewhere in Bateman's deposition testimony. Bateman Depo., Mar. 17, 2009, 49:6-12.

[10] Plaintiff denies this statement but fails to cite any specific act of Bateman other than her decision to terminate him for violating the policy without disciplining the employees who received the bottles of beer.

6

workers comp claim and Plaintiff's termination.  Even if the Court accepted Plaintiff's argument about the causal connection, Plaintiff cannot prove that the legitimate non-discriminatory reason for his termination, i.e. his violation of the alcohol policy, was pretextual.

Plaintiff has responded in opposition to Defendant's Motion for Summary Judgment. Plaintiff alleges additional facts to support his contention that he was treated differently after his injury.  Plaintiff claims that Defendant failed to make appropriate accommodations for him during his recovery and failed to pay workers' comp benefits in a timely manner.  With respect to his termination, Plaintiff points out that the other employees who received the bottles of beer were never disciplined.  Plaintiff argues that there are multiple disputes of material fact which preclude summary judgment, specifically, that Plaintiff ever violated the policy or that such a violation was gross misconduct.  Plaintiff further contends that there is direct evidence that his workers' comp claim was a substantial factor in his termination.  According to Plaintiff, Williams, the general manager of the Sam's Club where Plaintiff worked, told Plaintiff that he was "too much of a liability" after his injury.[11] As far as circumstantial evidence of a causal connection, Plaintiff asserts that he was similarly situated to the other employees who were not disciplined for violating the alcohol policy.  Plaintiff also alleges that Defendant filed a reverse workers' comp claim after terminating Plaintiff and sought to limit Plaintiff's workers' comp benefits, both evidence of retaliatory intent.  Finally, Plaintiff contends that there is a fact issue regarding when the other employees gave statements to management about the conduct which allegedly violated the alcohol policy.  For these reasons Plaintiff urges the Court to deny

---

[11] Plaintiff has not specifically cited the portion of the record evidencing this claim.  It appears to come from a supplementary response to Defendant's interrogatories signed by Plaintiff on July 24, 2009, the same day Plaintiff filed his response to the instant Motion.

Defendant's Motion.

## <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[12]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[13]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[14]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[15]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[16]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[12] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[14] *Celotex*, 477 U.S. at 324.

[15] *Matsushita*, 475 U.S. at 586.

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

8

one-side that one party must prevail as a matter of law."[17]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[18]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[19]  Finally, the "judge may not make credibility determinations or weigh the evidence."[20]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[21]


## ANALYSIS

It is undisputed that Tennessee law governs this diversity matter.  Under the *Erie* doctrine, in cases where a federal court exercises jurisdiction by virtue of the diversity of the parties, the federal court is bound to apply the substantive law of the forum state as if the action had been brought in a state court of the jurisdiction where the federal court is located.[22]  The

---

[17] *Id*. at 251-52 (1989).

[18] *Celotex*, 477 U.S. at 322.

[19] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[20] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[21] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[22] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

federal court must apply the law as it has been determined by the highest court of that state.[23]
When the highest court of the forum has not answered a particular question of law, the federal
court must discern or predict how the state courts would respond if confronted with the
question.[24]  The federal court must ascertain from all available data what the law is and apply it.[25]
In the absence of any indication that the state's highest court would adopt a rule contrary to the
rule announced in an intermediate appellate court, a federal court is not free to ignore the
announcement of a state appellate court on matters of state law.[26]


I.      *Plaintiff's Prima Facie Case*

        Under Tennessee law, an employee may have a cause of action for retaliatory discharge
where the employee's previous workers' compensation claim is a substantial factor in the
employee's termination.[27]  In order to make out a prima facie case for retaliatory discharge under
a workers' comp theory, a plaintiff must show that (1) the plaintiff was an employee of the
defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for
workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4)
the claim for workers' compensation benefits was a substantial factor in the employer's

---

        [23] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

        [24] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,*740 F.2d
1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir.
1981).

        [25] *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601 (6th Cir. 1985).

        [26] *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672,
676 (6th Cir. 2000).

        [27] *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984).

motivation to terminate the employee's employment.[28]  "Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury."[29]  Once the plaintiff makes out this prima facie case, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the employee's discharge.[30]

The Court holds that Plaintiff has failed to make out his prima facie case of retaliation. The first three elements of the claim are not in dispute.  However, Plaintiff has failed to adduce evidence from which a reasonable juror could conclude that his workers' comp claim was a substantial factor in his termination.  In order to make this showing, Plaintiff had to adduce either direct or circumstantial evidence of a causal connection between his protected activity and his discharge.  In order to satisfy his burden with circumstantial evidence, the evidence must be "direct and compelling."[31] Such circumstantial evidence may include

> the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.[32]

For example, the Tennessee courts have found that an employer's ad hoc application of an

---

[28] *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993).

[29] *Id.*

[30] *Id.* at 559.

[31] *Caldwell v. Nissan Motor Mfg. Corp., U.S.A.,* 968 S.W.2d 863, 865 (Tenn. Ct. App. 1997).

[32] *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006).

11

employee drug screening policy was compelling circumstantial evidence.[33]  The plaintiff's subjective beliefs or speculations, however, are insufficient to create the requisite causal relationship.[34]  "The plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge."[35]

### A. Williams' Comment

As an initial matter, Plaintiff argues that he has adduced direct evidence of retaliation in this case, a statement made by Williams that Plaintiff was "too much of a liability" following his injury.  The Court noted above that this statement was added in Plaintiff's supplemental responses to Defendant's interrogatories on the same day that Plaintiff filed his response in opposition to the Motion now before the Court.  In the supplemental response, Plaintiff does not offer any additional context or other evidence to explain when Williams made the statement and what Williams meant by this statement.  Defendant argues that the statement contradicts Plaintiff's deposition testimony and that Plaintiff cannot now introduce this statement to create a factual issue.

Without reaching Defendant's argument that the Court should ignore the eleventh-hour disclosure, the Court holds that the Williams' comment is circumstantial at best and not direct evidence of a causal connection.  The Tennessee Court of Appeals has listed "the expression of a negative attitude by the employer toward an employee's injury" as an example of circumstantial

---

[33] *Whirlpool Corp. v. Pratt*, 2008 WL 4615709, *6 (Tenn. Ct. App. Oct. 17, 2008).

[34] *Vaughan v. Harvard Indus., Inc.,* 926 F. Supp. 1340, 1350 (W.D. Tenn.1996).

[35] *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 ( Tenn. Ct. App. 1999) (citing *Vaughan*, 926 F. Supp. at 1350; *Anderson*, 857 S.W.2d at 559).

12

evidence that might establish the causal connection element.[36]  Furthermore, the Court holds that this single statement is not the kind of "compelling" circumstantial evidence required to establish the causal connection element.  In *Newcomb*, the Tennessee court found "compelling" evidence of management's negative attitude towards an employee who had sued for workers' comp benefits.  There the employee proffered testimony from five other employees who had heard management make repeated negative comments about the employee, his injury, and his claim to other employees.[37]  For instance, management told other employees that they would not receive raises because the company had to pay the claimant's workers' comp benefits.[38]

In contrast, Plaintiff has cited only a single comment made by Williams.  Plaintiff has proffered no other testimony from other employees that Williams made similar comments which would evidence a negative attitude about Plaintiff's workers' comp claim (and not Plaintiff's injury).  The comment was made in private at some point in time after Plaintiff's return to work and long before the termination itself.  Not only has Plaintiff failed to explain the context of the statement, Plaintiff has failed to show that there was any temporal proximity between Williams' remark and Plaintiff's discharge.[39]  In short, the Williams statement is not the kind of "compelling" circumstantial evidence that would make the showing under Tennessee law.

More importantly, Williams' comment is not relevant to Plaintiff's claim of retaliation.

---

[36] *Id.*

[37] *Id.* at 392.

[38] *Id.*

[39] Even if he could make this showing, temporal proximity alone is not enough to prove a causal connection.  *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995).

Williams was not responsible for the administration of Plaintiff's workers' comp benefits or the decision to terminate Plaintiff. It is undisputed that Defendant utilized CMI, a third-party, to administer its workers' comp claims. There is no evidence that Williams had any retaliatory motive due to the Plaintiff's workers comp claim. While Williams investigated the allegations that Plaintiff provided alcohol to other employees, the undisputed evidence showed that Bateman, not Williams, made the decision to terminate Plaintiff.[40] Therefore, the Court finds that Williams' statement is not relevant to showing a causal connection between Plaintiff's workers' comp claim and his termination.

### B. Disparate Treatment of Similarly Situated Employees

Plaintiff goes on to argue that Defendant's disparate treatment of the employees who accepted the bottles of beer from him is additional circumstantial evidence of discrimination. Plaintiff contends that Defendant's policy on alcohol prohibits employees from giving or receiving alcohol on company premises. According to Plaintiff, the fact that Defendant terminated Plaintiff but did nothing to discipline the employees who accepted the alcohol was motivated by Plaintiff's workers comp claim.

The Court finds this argument unpersuasive. The Tennessee courts have defined "similarly situated employees" in light of the standards applied by federal courts in other retaliation contexts.[41] In order to qualify as a "similarly situated" employee, the plaintiff and the

---

[40] *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (applying Title VII and ADEA).

[41] *Campbell v. Florida Steel Co.,* 919 S.W.2d 26 (Tenn. 1996). *See also Johnson v. Nissan North America, Inc.*, 146 S.W.3d 600, 607-8 (Tenn. Ct. App. 2004).

14

comparator employee must be "similar in all of the relevant aspects of their respective employment circumstances."[42]  In a case like the one at bar involving disciplinary action, the plaintiff must show that all relevant aspects of his employment situation are "nearly identical" to those of the comparison employee whom he alleges was treated more favorably.[43]  More specifically, the comparison employee (1) must have dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[44]  These factors generally are all relevant considerations in cases alleging differential disciplinary action.[45]

Applying these standards to the undisputed facts in this case, the Court finds that the other employees were not similarly situated to Plaintiff.  First, it is undisputed that Plaintiff and the other employees were subject to the same policy against alcohol in the workplace.  Nevertheless, Plaintiff has failed to show that he and the comparator employees dealt with the same supervisor, specifically, the same decision-maker about the discipline in this case.  The record indicates that Plaintiff was a salaried managerial employee; whereas, the comparator employees were hourly check-out supervisors.  Plaintiff argues that all employees reported to Williams, the general manager of the store.  Although it is not clear from the record who handled the discipline of the other employees, it is clear that Williams was not the decision-maker

---

[42] *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 351 (6th Cir.1998).

[43] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

[44] *Ercegovich,* 154 F.3d at 352.

[45] *Id.*

responsible for disciplining Plaintiff.  Nor can it be said that Plaintiff engaged in the same conduct as the other employees without differentiating or mitigating circumstances.  Plaintiff was a salaried manager and admits that he gave the bottles of beer to the other employees. Plaintiff created a risk of liability to Defendant that the employees might drink the alcohol on company property or during the drive home from work that night and cause serious injuries.  On the other hand, the other employees were simply guilty of receiving the alcohol.  There was no evidence that they did anything to create a risk of liability to the company such as drinking while driving.  There was testimony from management that this distinction was important in deciding what discipline Plaintiff should receive.  As a result, the Court finds that Plaintiff and the other employees were not similarly situated.  Therefore, Defendant's treatment of the other employees cannot be circumstantial evidence of a causal connection between Plaintiff's workers comp claim and his termination.

Plaintiff also had the opportunity to adduce evidence of other similarly situated employees.  For example, in this case a similarly situated employee would have been a salaried managerial employee who was disciplined by Bateman (or other like human resources manager in the company) for providing closed containers of alcohol in violation of the policy.  Plaintiff has not proffered any evidence about the discipline of such employees that would go to show that he was disciplined differently.  At the same time, Defendant has adduced evidence from Bateman that she has terminated other employees, with and without workers' compensation claims, for violating the policy.  In the absence of such evidence in support of his prima facie case, the Court finds that Plaintiff cannot show that a similarly situated employee was disciplined differently.

### C. Other Evidence

Plaintiff is left with evidence that management was aware of Plaintiff's workers comp claim. Plaintiff contends that his workers comp case was not handled properly and that certain benefits were not paid as required by Tennessee workers' compensation law. It is undisputed, however, that Defendant did not directly handle the claim but outsourced it to a third-party. Plaintiff has offered no proof that Bateman, the decision-maker in his case, had any involvement in the claims process or the handling of his workers comp case. While Bateman knew about Plaintiff's case, this knowledge alone is not so "compelling" as to constitute circumstantial evidence of a causal connection.

Having found that Plaintiff has failed to adduce sufficient evidence from which a reasonable juror could find that his workers' comp claim was a substantial factor in his termination, the Court holds that Plaintiff has failed to make out a prima facie case of retaliation.

### II.  Plaintiff Cannot Show that Defendant's Legitimate, Non-Discriminatory Reason is Pretext

Even if Plaintiff had made out a prima facie case, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's dismissal. Plaintiff admitted to violating Defendant's policy against distributing alcohol on company property. Plaintiff's argument that other employees also violated the policy is irrelevant on this point. The fact remains that Defendant provided bottles of beer to other employees on company property in violation of the policy. Plaintiff admitted that he had done so at the time of his termination and then again during his deposition. Plaintiff further admitted in his deposition testimony that his actions appeared to

violate the plain wording of the policy.  Indeed the policy states that a violation of the policy is grounds for "immediate dismissal."  The Court holds that Defendant's reason for terminating Plaintiff is a legitimate, non-discriminatory reason.

Plaintiff would then bear the burden to prove that Defendant's legitimate reason for terminating him is pretext.[46]  Plaintiff may show that (1) Defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions.[47]  The Court holds that Plaintiff has failed to make any of these showings.  First, Defendant's stated reasons had a basis in fact.  There is no dispute that Plaintiff actually gave bottles of beer to other employees in violation of the policy. Bateman, the manager who made the decision to terminate Plaintiff, testified that she has dismissed other employees including those with workers comp claims for violating the alcohol policy.  Similarly, Plaintiff has adduced no evidence that his violation of the policy was not the actual reason for his termination.  Plaintiff gave the other employees the bottles of beer on September 24, 2007, and a after a brief investigation, Defendant dismissed Plaintiff on September 27.  Third, Defendant's stated reasons were sufficient to explain its actions.  Again Plaintiff makes much of the fact that other employees were not disciplined at all.  As the Court has already held, however, those employees were not similarly situated to Plaintiff.  Therefore, the Court concludes that Plaintiff cannot prove that Defendant's stated reasons are pretext for retaliation.

---

[46] *Anderson*, 957 S.W.2d at 559.

[47] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

### III.  *Miscellaneous Questions of Fact*

Having held that Plaintiff cannot meet his burden to adduce sufficient evidence as to each element of his claim, the Court holds that Defendant is entitled to summary judgment.  Still Plaintiff argues that there are questions of material fact that preclude summary judgment.  More specifically, Plaintiff contends that the testimony of Bateman and Williams is not credible.  Both testified that Williams obtained written statements from the employees to whom Plaintiff gave the bottles of beer in September 2007, or prior to Plaintiff's termination.  Bateman then reviewed the statements in making her decision to terminate Plaintiff.  However, the written statements produced during discovery bear dates from January 2008.

The Court finds that this discrepancy does present a question of fact.  For their parts Williams and Bateman have filed affidavits in which they aver that the original statements were misplaced or discarded and that they obtained a second set of statements in January 2008.  Although the other employees testified that they gave only one written statement, the Court finds that this dispute of fact is not material to the case.  It is undisputed that another manager witnessed Plaintiff giving the bottles of beer to the other employees and reported the incident to Williams.  It is undisputed that Plaintiff admitted at the time of his termination and then again in his deposition that he had provided the bottles of beer to the other employees.  Plaintiff continues to assert that this was not the real reason for his dismissal.  Nevertheless, the fact that Plaintiff provided bottles of beer is not seriously in dispute.  Therefore, the question of how and when the written statements were obtained is not material to any of the elements of Plaintiff's prima facie showing, which he has failed to make.

### CONCLUSION

19

The Court holds that Plaintiff has failed to make out his prima facie case of retaliation for filing a workers' comp claim.  Plaintiff has not adduced evidence from which a reasonable juror could find that his workers' comp claim was a substantial factor in his termination.  Furthermore, Plaintiff cannot show that Defendant's proffered legitimate reason for his termination was pretextual.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 4th, 2009.

20